# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | . CRIMINAL NO. 1:15-cr-10338-FDS |
|     Plaintiff | . ALL DEFENDANTS |
| | . |
|        v. | . BOSTON, MASSACHUSETTS |
| | . JUNE 2, 2016 |
| OSCAR NOE RECINES-GARCIA | . |
| et al, | . |
|     Defendant | . |
| | . |

. . . . . . . . . . . . . . .

TRANSCRIPT OF INTERIM STATUS CONFERENCE
BEFORE THE HONORABLE F. DENNIS SAYLOR, IV
UNITED STATES DISTRICT COURT JUDGE
&
BEFORE THE HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:      UNITED STATES ATTORNEY'S OFFICE
BY: Peter K. Levitt, AUSA
One Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3355
peter.levitt@usdoj.gov

UNITED STATES ATTORNEY'S OFFICE
BY: Christopher J. Pohl, AUSA
One Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3963
christopher.pohl@usdoj.gov

UNITED STATES ATTORNEY'S OFFICE
BY: Rachel Y. Hemani, AUSA
One Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3141
rachel.hemani@usdoj.gov

For Defendant 1,      Michael L. Tumposky, Esq.
Oscar Noe Recines-Garcia  Hedges & Tumposky
*a/k/a* Psycho        15 Broad Street

```
1                              Boston, MA 02109
                               617-722-8220
2                              tumposky@htlawyers.com
                               via telephone
3
   For Defendant 2,           Paul J. Garrity, Esq.
4  Julio Esau                 14 Londonderry Road
   Avalos-Alvarado            Londonderry, NH 03053
5  a/k/a Violento             603-434-4106
                               garritylaw@myfairpoint.net
6
   For Defendant 3,           Joan M. Griffin, Esq.
7  German Hernandez-Escobar   P.O. Box 133
   a/k/a Terible              Dublin, NH 03444
8                              617-283-0954
                               griffin@lawjmg.com
9
   For Defendant 4,           Raymond A. O'Hara, Esq.
10 Noe Salvador               1 Exchange Place
   Perez-Vasquez              Worcester, MA 01608
11 a/k/a Crazy                508-831-7551
                               oharalaw@hotmail.com
12
   Defendant 5,               Bernard Grossberg, Esq.
13 Santos Portillo-Andrade    One McKinley Square
   a/k/a Flaco                Third Floor
14                             Boston, MA 02109
                               617 737-8558
15                             bgrossberg@grossberglaw.com

16 Defendant 6,               Michael J. Callanan, Esq
   Herzzon Sandoval           Law Office of Michael J. Callanan
17 a/k/a Casper               Suite 2A
                               111 Everett Ave.
18                             Chelsea, MA 02150
                               617-884-2130
19                             callananlaw@gmail.com

20 Defendant 8,               Kevin L. Barron, Esq.
   Jose Hernandez-Miguel      Kevin L. Barron
21 a/k/a Muerto               5 Lexington St No. 3
                               Charlestown, MA 02129-3114
22                             617-407-6837
                               kevinbarronesq@gmail.com
23
   Defendant 9,               Derege B. Demissie, Esq.
24 Edgar Pleitez              Demissie & Church
   a/k/a Cadejo               929 Massachusetts Avenue
25                             Suite 01
```

```
 1                            Cambridge, MA 02139
                             617-354-3944
 2                           dd@demissiechurch.com

 3  Defendant 10,            John A. Amabile, Esq.
    Christian Alvarado       Amabile & Burkly, P.C.
 4  a/k/a Catracho           380 Pleasant Street
                             Brockton, MA 02401
 5                           617-559-6966
                             john.amabile@amabileburkly.com
 6
    Defendant 11,            Stanley W. Norkunas, Esq.
 7  Cesar Martinez           11 Kearney Square
    a/k/a Cheche             Howe Building, Suite 202
 8                           Lowell, MA 01852
                             978-454-7465
 9                           attyswn@msn.com

10  Defendant 14,            Thomas J. Iovieno, Esq.
    Erick Argueta Larios     345 Neponset Street
11  a/k/a Lobo               Canton, MA 02021
                             617-464-3300
12                           tjilaw@yahoo.com

13  Defendant 15,            Ian Gold, Esq.
    Luis Solis-Vasquez       Attorney at Law
14  a/k/a Brujo              2 Clock Tower Place
                             Suite 260
15                           Maynard, MA 01754
                             617-297-7686
16                           ian.gold@iangoldlaw.com

17  Defendant 18,            Peter L. Ettenberg, Esq.
    Joel Martinez            Gould & Ettenberg
18  a/k/a Animal             370 Main Street
                             Worcester, MA 01608
19                           508-752-6733
                             pettenberg@gouldettenberg.com
20                           via telephone

21  Defendant 19,            Inga Parsons, Esq.
    Jose Rene Andrade        Inga Parsons Attorney at Law
22  a/k/a Triste             3 Besson Street, #234
    a/k/a Innocente          Marblehead, MA 01945
23                           781-581-2262
                             inga@ingaparsonslaw.com
24
    Defendant 20,            James J. Cipoletta, Esq.
25  Hector Enamorado         Citizens Bank Building
```

```
 1 | a/k/a Vida Loca            Suite 307
   |                           385 Broadway
 2 |                           Revere, MA 02151
   |                           781-289-7777
 3 |                           jcipoletta@comcast.net

 4 | Defendant 21,             Daniel J. Cloherty, Esq.
   | Henry Santos-Gomez        Collora LLP
 5 | a/k/a Renegado            100 High Street
   | a/k/a Pino                20th Flr.
 6 |                           Boston, MA 02110
   |                           617-371-1000
 7 |                           dcloherty@collorallp.com

 8 | Defendant 22,             Keith S. Halpern, Esq.
   | Rafael Leoner-Aguirre     572 Washington Street
 9 | a/k/a Tremendo            Suite 19
   |                           Wellesley, MA 02482
10 |                           617-722-9952
   |                           ksh@keithhalpern.com
11 |                           via telephone

12 | Defendant 23,             Tracy A. Miner, Esq.
   | Hector Ramires            Demeo LLP
13 | a/k/a Cuervo              200 State Street
   |                           Boston, MA 02109
14 |                           617-263-2600
   |                           tminer@demeollp.com
15 |
   | Defendant 24,             Mark W. Shea, Esq.
16 | Daniel Menjivar           Shea & LaRocque
   | a/k/a Roca                Suite 103
17 | a/k/a Sitiko              929 Massachusetts Avenue
   |                           Cambridge, MA 02139
18 |                           617-577-8722
   |                           markwshea@gmail.com
19 |
   | Defendant 25,             John R. Salsberg
20 | Angel Pineda              Law Office of John Salsberg
   | a/k/a Bravo               221 Lewis Wharf
21 | a/k/a Jose Lopez          Boston, MA 02110
   |                           617-523-7788
22 |                           jrs@salsberglaw.com

23 | Defendant 26,             James H. Budreau, Esq.
   | Jose Vasquez              Bassil, Klovee & Budreau
24 | a/k/a Little Crazy        20 Park Plaza
   |                           Suite 1005
25 |                           Boston, MA 02116
```

```
 1                              617-366-2200
                               jbudreau@bkandblaw.com
 2
   Defendant 28,              John H. Cunha , Jr., Esq.
 3 Bryan Galicia-Barillas     Cunha & Holcomb, PC
   a/k/a Chucky               One State Street
 4                            Suite 500
                              Boston, MA 02109-3507
 5                            617-523-4300
                              cunha@cunhaholcomb.com
 6
   Defendant 29,              Victoria R. Kelleher, Esq.
 7 Domingo Tizol              50 Congress Street
   a/k/a Chapin               Suite 600
 8                            Boston, MA 02109
                              978-744-4126
 9                            victoriouscause@gmail.com

10 Defendant 31,              Stephen G. Huggard, Esq.
   Oscar Duran                Locke Lord LLP
11 a/k/a Demente              111 Huntingon Avenue
                              Boston, MA 02199
12                            617-239-0769
                              stephen.huggard@lockelord.com
13
   Defendant 32,              Michael C. Bourbeau, Esq.
14 Edwin Gonzalez             Bourbeau and Bonilla, LLP
   a/k/a Sangriento           Building K
15                            80 Washington Street
                              Norwell, MA 02061
16                            617-350-6565
                              mike@lawgenie.com
17
   Defendant 33,              E. Peter Parker, Esq.
18 Henry Josue Parada         Law Office of E. Peter Parker
   Martinez                   151 Merrimac Street
19 a/k/a Street Danger        Boston, MA 02114
                              617-742-9099
20                            peter@parkerslaw.com

21 Defendant 36,              William M. White , Jr., Esq.
   Mario Aguilar Ramos        Law Offices of William
22                            M. White, Jr. and associates
                              218 Lewis Wharf
23                            Boston, MA 02110
                              617-720-2002
24                            wmw@libertychamp.com

25
```

```
 1  Defendant 38,              Jonathan Shapiro, Esq.
    Edwin Diaz                 Stern, Shapiro, Weissberg & Garin
 2  a/k/a Demente              Suite 500
                               90 Canal Street
 3
                               Boston, MA  02114-2022
 4                             617-742-5800
                               jshapiro@sswg.com
 5
    Defendant 40,              Elliot M. Weinstein, Esq.
 6  Jairo Perez                83 Atlantic Avenue
    a/k/a Seco                 Boston, MA 02110
 7                             617-367-9334
                               elliot@eweinsteinlaw.com
 8                             via telephone

 9  Defendant 41,              James J. Gribouski, Esq.
    Ramiro Guerra              Glickman, Sugarman,Kneeland &
10  a/k/a Camello              Gribouski
                               11 Harvard St.
11                             P.O. Box 2917
                               Worcester, MA 01613
12                             508-756-6206
                               mogulesq@charter.net
13                             via telephone

14  Defendant 42,              James N. Greenberg, Esq.
    Manuel Martinez            6 Beacon Street
15  a/k/a Gordo                Suite 825
                               Boston, MA 02108
16                             617-557-4444
                               jimmy@jimmygreenberg.com
17                             via telephone

18  Defendant 43,              Bruce G. Linson, Esq.
    Alexander Alvarenga        Law Office of Bruce G. Linson
19                             Howe & Bainbridge Bldg.
                               240 Commercial St., Suite 3A
20                             Boston, MA 02109
                               617-371-0900
21                             brucelinson@earthlink.net

22  Defendant 44,              George F. Gormley, Esq.
    Manuel Flores-Valle        George F. Gormley, P.C.
23  a/k/a Manny                160 Old Derby Street
                               Suite 456
24                             Hingham, MA  02043
                               617-268-2999
25                             gfgormley@aol.com
```

```
 1  Defendant 45,             Carlos Jorge Dominguez, Esq.
    Heiner Yovani Gomez       Suite G3
 2  a/k/a Fiero               239 Causeway Street
                              Boston, MA 02114
 3
                              617-742-2824
 4                            dmngzcarlos@aol.com

 5  Defendant 46,             Lenore Glaser, Esq.
    Geiber Acevedo Galvis     Law Office of Lenore Glaser
 6  a/k/a The Columbian       45 Bromfield Street
    a/k/a Fnu Lnu             Suite 500
 7                            Boston, MA  02108
                              617-753-9988
 8                            lglaser@glaserlaw.com

 9  Defendant 47,             J. Thomas Kerner, Esq.
    Carlos Lovato             240 Commercial Street
10                            Suite 3A
                              Boston, MA 02109
11                            617-720-5509
                              thomas.kerner@comcast.net
12
    Defendant 54,             Leslie Feldman-Rumpler, Esq.
13  Oscar Ramirez-Cornejo     Leslie Feldman-Rumpler, Attorney
    a/k/a Vago                at Law
14                            Suite 500
                              90 Canal Street
15                            Boston, MA 02114
                              617-728-9944
16                            leslie@feldmanrumplerlaw.com

17  Defendant 55,             Liam D. Scully, Esq.
    Mauricio Sanchez          101 Summer Street
18  a/k/a Tigre               Fourth Floor
                              Boston, MA 02110
19                            781-834-4000
                              liamdscully@aol.com
20
    Defendant 56,             James Michael Caramanica, Esq.
21  Jose Adan Martinez        Law Office of James M. Caramanica
    Castro                    8 North Main Street, Suite 403
22  a/k/a Chucky              Attleboro, MA 02703
                              508-222-0096
23                            caramanicalaw@gmail.com

24  Defendant 58,             Emily R. Schulman, Esq.
    Rigoberto Mejia           Wilmer Hale LLP
25  a/k/a Ninja               60 State Street
                              Boston, MA 02109
```

1                           617-526-6077
                            emily.schulman@wilmerhale.com
2
  Defendant 59,            Vivianne E. Jeruchim, Esq.
3 Modesto Ramirez          Jeruchim & Davenport, LLP
  *a/k/a* Snoopy           50 Congress Street
4                          Suite 615
                           Boston, MA 02109
5                          617-720-6047
                           jeruchim@jdlawyers.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
            Court Reporter:
24
            Proceedings recorded by electronic sound recording,
25          transcript produced by transcription service.

                        *Judy Bond*
            **Certified Federal Court Transcriber**
                      **508.984.7003**

1   COURT CALLED INTO SESSION

2   (3:11:55 P.M.)

3           THE CLERK:  June 2, 2016, and we are on the record

4   in Criminal Case No. 15-10338, United States of America

5   verse of Recines-Garcia et al, the Honorable M. Page Kelley

6   and F. Dennis Saylor presiding.

7           Would counsel -- I'm sorry.  I don't think --

8           MAG. JUDGE KELLEY:  Don't say that.

9           Good afternoon, everyone.

10          MR. LEVITT:  Good afternoon, Your Honor.

11          MAG. JUDGE KELLEY:  So, I do just want to put on

12  the record that there is one of the defendants here.  Can we

13  identify him for the record, please?

14          MS. PARSONS:  Yes, Your Honor.  Here today is Mr.

15  Jose Andrade who is here present in court with an

16  interpreter.

17          MAG. JUDGE KELLEY:  Okay.  And that's Inga

18  Parsons, --

19          MS. PARSONS:  Yes.

20          MAG. JUDGE KELLEY:  -- his attorney.

21          And let's swear in the interpreter.

22          SPANISH INTERPRETER DEBORAH HUACUJA, SWORN

23          THE CLERK:  And can you please state your name for

24  the record?

25          THE INTERPRETER:  For the record my name is

1 Deborah Huacuja.  Good afternoon.

2          MAG. JUDGE KELLEY:  Good afternoon.  Thank you,

3 Ms. Huacuja.

4          And good afternoon, Mr. Andrade.

5          So we do have a sign-in sheet that counsel -- who

6 all of whom are present have signed, and some counsel have

7 indicated that they're standing in for other counsel, and so

8 we're going keep that as a record.

9          And also I believe that Ms. Moore has identified

10 the parties who are appearing by phone, and I'd just like to

11 ensure that they're still on the phone.  So if you could

12 just identify yourselves once again if you're on the phone?

13          MR. ETTENBERG:  Peter Ettenberg for Joel Martinez.

14          MR. WEINSTEIN:  Elliott Weinstein for Mr. Perez.

15          MR. GREENBERG:  Good afternoon.  James Greenberg

16 for Manuel Martinez.

17          MR. HALPERN:  Keith Halpern, Rafael

18 Leoner-Aguirre.

19          MR. TUMPOSKY:  Michael Tumposky for Mr.

20 Recines-Garcia.

21          MR. GRIBOUSKI:  Jim Gribouski for Ramiro Guerra.

22          MAG. JUDGE KELLEY:  Okay.  So and as for everyone

23 else who is present, we'll just go by the sign-in sheet.

24          And I assume the government is not on that list,

25 so if you would identify yourselves for the record?

1          MR. LEVITT:  Peter Levitt on behalf of the

2 government.  Good afternoon.

3          MR. POHL:  Good afternoon, Your Honor.

4 Christopher Pohl for the United States.

5          MS. HEMANI:  Rachel Hemani for the United States.

6          MAG. JUDGE KELLEY:  Good afternoon, and thank you.

7          So this is our second status conference, and I'll

8 be happy to hear any matters that any counsel want to bring

9 up.  There are a couple of things that I'd like to cover

10 first, and then I'll hear you afterwards.

11          So first of all, I notice that Marshal Allison

12 Hodgkins is here, and I hope everyone knows her.  If you're

13 a defense counsel and you don't know her, you can look at

14 her right now.  That's who she is.

15          And she is going to be of your assistance in

16 making sure that your clients get to review discovery in the

17 institutions in which they are held.  If your client is held

18 in an institution that the marshals are not holding him in,

19 that could be a problem for all concerned.

20          But Ms. Hodgkins, do you just want to address the

21 group?

22          MARSHAL HODGKINS:  If I may, Your Honor?

23          MAG. JUDGE KELLEY:  Absolutely.

24          MARSHAL HODGKINS:  If issues arise where you find

25 yourself against a brick wall, please contact me directly.

1 I think given the fact that there are so many attorneys,

2 you'd probably inundate each institution if you're all

3 calling down there.  But please work out whatever you can;

4 and again, if you find that it's definitely necessary for me

5 to be involved, please contact me.

6        MAG. JUDGE KELLEY:  Okay.  Thank you.  And Ms.

7 Hodgkins has some experience with the various point people

8 at different institutions, so if you're having trouble, she

9 can at least point you to the right person to call.

10        You know, we've really been struggling over the

11 last couple of months with how to get the materials in to

12 the various institutions and make sure that the defendants

13 have the required time they need to look at the materials.

14 Oddly, I can't really figure out whose job it is to ensure

15 that that happens.  I'm sure counsel knows that Rule 116.4

16 orders the government to make an extra copy of tape

17 recordings available for defendants who are in custody.

18        The government has really been very helpful

19 working with defense counsel and Mike Andrews in trying to

20 purchase computers, load them up with discovery and get them

21 into Wyatt where I believe 26 defendants are being held.

22 That's a kind of pilot program that's going on right now.

23        Emily Schulman has agreed to purchase the

24 computers.  As it turns out, a CJA lawyer has to buy them

25 according to the protocol, so she's agreed to do that.  And

1  as soon as the computers are purchased, the government

2  stands ready to load them up.  Mike Andrews, if necessary,

3  will drive them to the institution, and we're going to get

4  that underway I hope within the next two weeks.

5          With regard to the other institutions, if there's

6  a critical mass of defendants at a certain institution, we

7  hope we can buy more computers, if this works out.  But in

8  the meantime, it may be your only option is to work with Ms.

9  Hodgkins.  And also I think the government would be happy to

10 help you to try to get the materials in to the institution

11 and load it on to an appropriate device.  And if all else

12 fails, you can always go there yourself and sit and go over

13 it with the client.  Or have a paralegal do that, and I

14 don't think there would be any trouble in getting the funds

15 to have someone else at a lower rate sit with the defendant.

16 We're trying to avoid that just for obvious reasons, but

17 anyway.  That's a big concern, and we're working as hard as

18 we can on it.

19          So I would like to ask the government just to

20 state what is the status of the automatic discovery

21 disclosures and when do you anticipate those being finished.

22          MR. LEVITT:  Your Honor, we did file a status

23 report yesterday pursuant to the Court's order.

24          But to give sort of the global picture, we've been

25 doing rolling discovery really on a monthly basis, and to

1 date we've produced approximately 2,293 documents which

2 constitute approximately 15,000 pages, about 9,000 audio

3 clips or items which is hundreds of hours of audio all in

4 Spanish, approximately 1400 audio video files again all in

5 Spanish.  That constitutes about a hundred hours.  That's --

6 and then approximately 5,000 text messages from one of the

7 -- from CW-1.  In terms of where we are, we estimate we're

8 approximately 75 percent through with what is sort of

9 pre-indictment material.

10        The bulk of the remaining material is that audio

11 video.  As I said, we've done about a hundred hours.  Much

12 of the audio/video is generated from CW-1, and we have a

13 team of paralegals and interns supervised by lawyers that

14 are watching every minute of those audio/video files to see

15 anyplace where the CW-1's face appears, and then that needs

16 to be redacted.  So CW-1 is in a car and walks by a car

17 window, and you can see his face.  Or goes to the bathroom,

18 and he's in the mirror, and you can see his face.  So going

19 through those and redacting the faces has been time

20 consuming, but we've done about a hundred hours, and we

21 think it's probably another fifty hours.

22        There is a large discovery package going out

23 tomorrow.  It's the largest one we've done so far.  It has

24 to go on a hard drive.  That's how big it is.

25        And you know, we suspect that, you know, we're

1  well along the way to being finished I guess I would say.

2          MAG. JUDGE KELLEY:  Can you give -- I'll just say

3  this.  To date I have not set a hard deadline, because I

4  think if you're producing things on a rolling basis, people

5  are going to take a while to look at what you've already

6  given them, but I do --

7          I am really concerned that the case is as old as

8  it is, and we don't have a date by which you -- at least a

9  target date for you to complete automatic discovery.

10          So can you give us a date at this time?

11          MR. LEVITT:  I would say the next --

12          Two more productions, so it's really 60 days.

13          And, you know, I guess what I would say about it

14  -- a couple of things -- is, you know, to date we've

15  probably received three or four discovery letters in total

16  which we've had no difficulty responding to.  We've had some

17  informal requests as well we've had no problem responding

18  to.

19          For many of the defendants, particularly the

20  defendants that are implicated in homicides, we have

21  provided individualized discovery of the most significant

22  evidence involving that particular homicide.

23          So, you know, I guess in -- so my sense is, and

24  obviously the defense lawyers here can speak for themselves,

25  but there hasn't been a good deal of clamoring that I've

1 heard in terms of time, because it is so much material to

2 digest. And we're trying to get out, you know, as much as

3 of the -- the most significant evidence as fast as we can

4 and sort of front loading that.

5      ATTORNEY: Your Honor?

6      MAG. JUDGE KELLEY: Yes.

7      ATTORNEY: I'd like to clamor for one thing sooner

8 rather than later. The stock discovery letter that the

9 government gives us, I don't think we should have to wait 60

10 days to get that. That has some information in it that

11 isn't really in the discovery that's getting produced.

12      MR. LEVITT: We can do that in the next 30 days.

13      ATTORNEY: That's fine.

14      MAG. JUDGE KELLEY: Okay. Okay. So I'm going to

15 wait and hear from defense counsel on that, but your request

16 is June 30 for a formal discovery letter and July 30 for

17 completion of fact discovery.

18      MR. LEVITT: And, Your Honor, the only thing I

19 would qualify that July 30 is the investigation is ongoing,

20 so we're continuing to get material in. But that will be

21 sort of the -- certainly all of the pre-indictment material

22 other than 21-day material.

23      MAG. JUDGE KELLEY: Okay.

24      MR. LEVITT: And, you know, and to the extent

25 there's things post indictment that are relevant that we can

1 produce as well, we will.

2          MAG. JUDGE KELLEY:  Okay.  And I would just -- I

3 noticed your status report said you've already provided some

4 Jencks.

5          MR. LEVITT:  Correct.

6          MAG. JUDGE KELLEY:  And so I would just obviously

7 encourage you to keep providing that.  That's for Judge

8 Saylor to order, but I'm glad you're doing that.

9          So just one second, Mr. Cunha.

10          So with regard to Docket No. 490, which is

11 Attorney Caramanica's request, they had written you a letter

12 asking for discovery targeted specifically to his client.

13 Has that been responded to?

14          MR. LEVITT:  We've left him a message telling him

15 that we are going to do that for him.

16          MAG. JUDGE KELLEY:  Okay.

17          MR. LEVITT:  So I mean -- you know, and I've

18 talked to several of the defense lawyers about this.  You

19 know, we will attempt to accommodate everyone if they want

20 that.  Some of them is easier than others.  So, you know,

21 the ones -- some folks have contacted us about that, and

22 we've done it, and we'll continue to do so.

23          MAG. JUDGE KELLEY:  Okay.  Mr. Cunha, yes.

24          MR. CUNHA:  Just by way of information, if Mr.

25 Levitt could tell us, is the 75 percent -- is the hard disk

1 comprised within that 75 percent?

2          MR. LEVITT:  It is comprised -- yes, it is.

3          MR. CUNHA:  Okay.  So it's not 75 percent we've

4 got so far.

5          MR. LEVITT:  As of tomorrow.

6          MR. CUNHA:  As of tomorrow.

7          MR. LEVITT:  Correct.

8          MAG. JUDGE KELLEY:  Okay.  So does any --

9          MR. SALSBERG:  Your Honor?

10          MAG. JUDGE KELLEY:  Yes.

11          MR. SALSBERG:  One quick thing occurs to me.  When

12 I hear Mr. Levitt mention that people working for the

13 government are looking at all of this video, I thought he

14 was going to say --

15          MR. WEINSTEIN:  Excuse me, Judge.  This is Elliott

16 Weinstein.  We on the phone can't hear any lawyer speaking

17 other than you, Your Honor.

18          MAG. JUDGE KELLEY:  Okay.  So we're going to have

19 -- this is John Salsberg, and he's going to speak into a

20 microphone.

21          MR. SALSBERG:  Can you hear me, Elliott?

22          MR. WEINSTEIN:  Yeah.  Thank you.

23          MR. SALSBERG:  So I thought Mr. Levitt was going

24 to say we have people from the government looking at the

25 video and keeping track of exculpatory evidence so we could

1 turn that over to defense counsel.  I literally did think

2 that's what he was going to say.  But that does seem like a

3 -- that if they're going to spend the time to look at all

4 this video and listen to the audio, that perhaps they should

5 be thinking about that as a task, as well as tagging each of

6 the videos with the names of the defendants who are referred

7 to in the video so that we don't have to do all 50 some odd

8 of us what they're doing, which is watching all these

9 videos.  If they're watching all of them and listening to

10 all of them, why shouldn't they simply say, okay, this one

11 goes to Pineda, and one goes to whoever else, and we're

12 keeping track of that.  It doesn't sound like that it's an

13 assistant U.S. attorney spending their time but probably --

14          Well, I don't know.  Is it a paralegal or a law

15 school student?

16          MAG. JUDGE KELLEY:  Maybe I'll ask Mr. Levitt to

17 respond to that.

18          MR. LEVITT:  Well, we're fully cognizant of our

19 responsibilities with respect to exculpatory evidence, and

20 we'll continue to monitor that.

21          MAG. JUDGE KELLEY:  So with the 9,000 audios and

22 videos, do they come with a table of contents?

23          MR. LEVITT:  One moment, Your Honor?

24          MAG. JUDGE KELLEY:  Ms. Hemani, you can just

25 explain if you want.

1          MR. LEVITT:  That would be great.  Go ahead and do

2 that.

3          MS. HEMANI:  Of the 9,000 audio clips, about 8,000

4 of those are the CW-1's consensual T. III calls, and those

5 -- we'll be producing those tomorrow in a format that allows

6 everybody to sort it by phone number and by date.  That's

7 all the information that we have about it.

8          There are also a number of -- there are a number

9 of reports that are being produced.  Certainly not about

10 every phone call and certainly not about every meeting, but

11 to the extent that there are reports that talk about CW-1

12 says that on such-and-such a date he met with these people

13 or he spoke to so-and-so on the phone, that's another way to

14 sort of find relevant material.

15          But we don't have an index by the --

16          And to address the point, the audio/video that

17 people are watching to redact, that's in Spanish, and the

18 individuals who are watching it don't speak Spanish.

19          I mean, we're trying to protect the identity of

20 CW-1.  So if it were as simple as somebody's watching it and

21 they can keep a list of who appears on it, we would do that,

22 but that's not the case at all.

23          MAG. JUDGE KELLEY:  I see.  But with regard to --

24          If I could just ask you to clarify something you

25 said?  With regard to your writing something out that

1  identifies a call, does it include the names of the

2  participants?

3          MS. HEMANI:  To the extent that there are reports

4  --

5          I mean, reports were generated by law enforcement

6  in this case about most of the significant events that

7  occurred over in lengthy investigation and those reports are

8  being produced.  Many of them have been produced, and they

9  identify by name I think, usually by their gang name the

10 individual defendant's names, and we're producing everything

11 in a format that's word searchable.

12         MAG. JUDGE KELLEY:  So, for example, if you

13 represent someone with a certain nickname, you could run

14 that nickname through and come up with all the calls where

15 the government thinks they're on the call?

16         MS. HEMANI:  It wouldn't be all the calls; it

17 would be all the calls that have reports written about them.

18         But you could also search your client's telephone

19 number for those 8,000 telephone calls or any known

20 telephone numbers and identify all the calls that come up

21 with that phone number on it.

22         MAG. JUDGE KELLEY:  Okay.

23         MR. LEVITT:  So just to give that some further

24 context, I mean so CW-1 has a consensual T. III on his

25 phone.  He engages in what he thinks is a significant call

1  with somebody.  Typically he's then calling an agent and

2  telling him about the call, and that agent or that trooper,

3  whoever it is, is writing a little report which will say

4  CW-1 reported that he had a call with, you know, X person

5  and, you know, maybe a little bit of the substance of it.

6          So that is a way to sort of back into finding

7  those calls.  You know, essentially it's a way of saying

8  these are the calls that in real-time the government viewed

9  as significant.  That doesn't mean that there aren't others,

10  right, but --

11          MAG. JUDGE KELLEY:  So when you send out your

12  discovery tomorrow, will it include a cover letter that

13  explains all of the features of the discovery to defense

14  counsel?

15          MR. LEVITT:  Yeah, and I think it has been

16  explained in the past in terms of --

17          MAG. JUDGE KELLEY:  Okay.

18          MR. LEVITT:  I mean, so one of the issues just to

19  give you an example was we sent out the consensual Title III

20  calls, and some of the -- we got a couple of lawyers who

21  said, gee, are they searchable in any way?  And we talked to

22  our tech person, and they said no.  And so we said, well,

23  why don't we make it in a searchable fashion, and so we're

24  reproducing that now tomorrow.  That's what Ms. Hemani's

25  referring to.

1          So the consensual T. III calls that were

2  previously produced, and we've advised the defense lawyers a

3  few weeks ago that we were going to be doing this, are now

4  sortable by telephone number.  So they can ask their client

5  what was your telephone number during this time period.

6  They can search that telephone number and pull up all the

7  calls between that telephone number and the cooperating

8  witness.

9          MAG. JUDGE KELLEY:  So if there is a mention of a

10 certain defendant on a call but it's between two people who

11 are not him and they're just talking about his involvement

12 in something or as in detention hearing they are mentioning

13 that a certain person was at a meeting, et cetera, how would

14 that person's defense counsel figure out to listen to that

15 call?

16         MR. LEVITT:  So in the first instance they would

17 see if it's in a report.  As I said, I mean, with --

18         MAG. JUDGE KELLEY:  So they search their client's

19 name through the reports.

20         MR. LEVITT:  Correct.  So the discovery -- the

21 reports that are produced are searchable by name.  So they

22 would search their client's street name, their MS-13 name.

23         And, you know, as I said, I mean, I think there

24 are, you know, most of the significant calls -- at least the

25 ones that were deemed significant by the government at the

1 time there is some sort of accompanying report.

2　　　　MS. HEMANI:  There's also we produced -- I don't

3 know how many, but there are some draft translations of some

4 of the calls and some of the meetings and some summary

5 translations which we've produced, and those also to the

6 extent we could identify the individual who participated in

7 it, those are searchable too.  And we're continuing to

8 prepare and work on transcriptions of some of the key

9 meetings, and we will be producing those as we have them.

10　　　　MAG. JUDGE KELLEY:  Okay.  So just on this topic,

11 yes, Ms. Griffen?  Does anyone have a comment or yes?  Yes.

12　　　　MS. GRIFFIN:  Yes, and I'm going to move to the --

13 Joan Griffin.

14　　　　I do just want to say I'm one of the people that

15 sent in one of those discovery letters prior to the most

16 recent one, and while some discovery has been produced I was

17 mainly asking for the government to pinpoint the discovery

18 that referenced or implicated my client.

19　　　　I actually believe, for example, that on those

20 hours and hours of CW-1 calls he is not a participant at

21 all, and I would expect he's mentioned very little if at

22 all.

23　　　　So rather than my trying to listen to all of this

24 in Spanish to figure that out, I have asked the government

25 to tell me if he's either participating in any of those

1 calls or is mentioned in any of those calls.  So they have

2 not been able to do that yet.  I understand that they're now

3 saying the calls are searchable by phone number and date,

4 but they're not searchable by name of defendant.

5          Now, the transcripts -- we have received a few

6 transcripts, and those do identify the participants, so

7 that's fine.  You know, that would work.

8          But in general, if you have some of these

9 defendants such as mine who are involved in very --

10 apparently very limited events and perhaps no calls with the

11 CW-1 who seems to have been a member of one of the

12 particular cliques here but -- and talks to those people but

13 doesn't talk to everyone else, obviously it would be helpful

14 and efficient if the government gave us a little package and

15 said this is what we've got against your client.

16          Which has been done in other cases; and in

17 particular, the NECC case that I represent a defendant in.

18 When they produced discovery to us, it was organized by

19 folder, and it had a folder called "Indictment Docs," and

20 for each defendant, you know, you had the documents as to

21 your particular involvement.  And for someone who's a small

22 defendant in particular, it's very helpful to be able to

23 start with that and not just have, you know, hours and hours

24 and hours of tapes.

25          This discovery is not organized like that.  The

1  only index we've received I think identifies the major

2  murders, but for example doesn't mention my client at all in

3  any of the indexed materials.  So that's not a help to me.

4         So the short answer is I think, you know, we're

5  trying to work with the government, but some of us are

6  clamoring, and at this point I would expect that there will

7  be a motion filed on this issue if we can't get more

8  pinpointed discovery.

9         And I told the government flat out I'm

10  CJA-appointed counsel.  I'm going to have to file a budget,

11  and the Court isn't going to want to see a budget for me to

12  just sit and listen to hours and hours of stuff when they

13  know that I'm not in 99 percent of it.

14         MAG. JUDGE KELLEY:  Okay.

15         MR. LEVITT:  Well, so, you know, we'd be happy to

16  provide Ms. Griffin with -- as we have with many of

17  defendants who've asked -- with a packet of materials

18  concerning her client.

19         You know, we can not say this is everything about

20  your client, because there are, you know, thousands of --

21  well, there's hundreds of hours of consensual T. III

22  conversations.

23         I agree with Ms. Griffin.  I think it's unlikely

24  that those are going to be involving her client, because the

25  CW was involved, in particular, with one clique, and her

1  client was in a different clique, and her client was in jail

2  for a good deal of the time.  So she kind of has a short

3  window when her client is out.  So we can certainly work

4  with her to provide, you know, some sort of individualized

5  discovery.

6          As I've said, her client is not implicated in one

7  of the murders that are currently charged or listed, so we

8  have -- we have focused primarily in terms of individualized

9  discovery on those to start, because those folks have been

10  asking since the beginning.  But we're sort of done with

11  that largely, so we can certainly work with her to try to

12  help her on that.

13          MAG. JUDGE KELLEY:  I do think for some defendants

14  who are mentioned infrequently not -- just giving them the

15  global discovery is not really giving them the discovery.

16  They need to know what is the evidence against me without

17  their lawyer listening to 9,000 hours or whatever.

18          MR. LEVITT:  It's true.  There's a handful of

19  defendants like that.  And, you know, one thing we're happy

20  to sit down with them in the first place and sort of walk

21  through the evidence that we have to date.  You know, sort

22  of what we see as the case against them, and to help try to

23  pinpoint them to time periods.  If they were at a particular

24  clique meeting, letting them know that sort of thing.

25          MAG. JUDGE KELLEY:  Okay.

1          MR. LEVITT:  As I said, I think we've focused

2  primarily on the murders to date, but I think we're sort of

3  past that point and can work towards some of the other

4  defendants.

5          MAG. JUDGE KELLEY:  Okay.  Mr. Cunha, did you have

6  something?

7          MR. CUNHA:  I think Mr. Bourbeau wanted to go

8  first.

9          MAG. JUDGE KELLEY:  Mr. Bourbeau?

10          MR. CUNHA:  I cede to Mr. Bourbeau.

11          MAG. JUDGE KELLEY:  Okay.  Yes.

12          MR. BOURBEAU:  Yes, good afternoon, Your Honor.

13          First of all, I represent Mr. Edwin Gonzalez who

14  has been charged with two homicides and an attempted murder.

15  And I very much appreciate the government's informal

16  communications, and I've had a number of them.

17          I am concerned with both the timing of the

18  discovery and the substance of the discovery.  What I can

19  tell the Court is right now as to I only have -- and I'm

20  hopeful that tomorrow's production will be more fruitful

21  than what I've received so far.  Only in the last production

22  did I receive anything involving one of the homicides, and

23  that production --

24          And I can tell you from experience in homicide

25  cases, is it's just a fraction of the materials that are in

1 any typical homicide file.  There's very few crime scene

2 reports, which is typical Rule 16 materials.  There's very

3 few actual substantive reports concerning the homicide

4 investigation.  There are a few statements that, you know,

5 came up surrounding -- I'm speaking particularly as to the

6 Martinez homicide which was a State Police investigation.

7        But a State Police investigation, for example, has

8 a case jacket.  It identifies hundreds of items and where

9 those items are.  And I've mentioned that to the government

10 I don't have that case jacket, and I don't have what items

11 go along with it, which would be typical Rule 16 materials.

12 And that's just that one homicide.

13        Finally, as to the attempted murder, after a

14 number of calls I finally got I believe 12 pages on the

15 attempted murder, which again is simply an incident report,

16 which is a one-paragraph summary and a bunch of just not

17 identifying information.

18        That is not what is in a typical State file, and

19 these are State cases that are being tried by way of the

20 racketeering acts.

21        So, you know, I do ask the government, and I ask

22 the Court to help us implore the government to really turn

23 over as much of the files as they can.

24        And again, I can understand that this is a large

25 undertaking, but they chose to indict it in the way they

1   have, and they chose to proceed in the way they have.  But

2   we're now four months out, and I'm still yet to receive on

3   the January 10 one single document other than some brief

4   summaries that were provided.  And that --

5          You know, unfortunately, the government is already

6   filing motions and attaching documents that we don't have.

7   I just filed a request for an extension on that.

8          So again, I'm just --

9          MAG. JUDGE KELLEY:  I saw that, and I'll grant

10  that request.

11         MR. BOURBEAU:  Yeah.  Again, I'm just imploring

12  the government to turn over or at least make inquiries of

13  the State.  You know, and I understand there's State

14  prosecutors and what part of the file they may have gotten

15  and may not have gotten at this time.

16         MAG. JUDGE KELLEY:  Okay.

17         MR. BOURBEAU:  But to turn that over, because it

18  really is -- this is not typical cases that you would see in

19  a State case.

20         MAG. JUDGE KELLEY:  Okay.  Thank you, sir.

21         MR. LEVITT:  So I think Mr. Bourbeau is --

22         And I wish he'd asked me about this.  I would have

23  told him.

24         -- is under a misapprehension as to how this case

25  developed.

1          We didn't adopt these two murders nor this

2 attempted murder from the State.  These are federal

3 investigations.  The crime scene at the day of the scene is

4 the State responding to it, and then it was quickly a

5 federal investigation.  Okay?  So he's not going to get what

6 he would normally expect to get from a State homicide

7 investigation.  Okay?

8          The attempted murder that he's mentioning was not

9 charged in State court, so there is no State file to provide

10 him.  Okay?

11          So we have provided information on both, you know,

12 the --

13          Back in March I provided Mr. Bourbeau with the

14 most important evidence of his client's involvement in the

15 murder of Christopher Delacruz:  the tape recorded

16 statements of his client to the cooperating witness

17 admitting at length to the murder, describing in detail how

18 he murdered Christopher Delacruz, and including the pictures

19 from the car of his client while he's talking about the

20 murder.  I also included the summaries of the other

21 individuals who were involved in the murder.  That at the

22 end of the day will be the most important evidence with

23 respect to that murder.

24          MAG. JUDGE KELLEY:  Okay.

25          MR. LEVITT:  Mr. Bourbeau -- just to -- you know,

1  he had asked us about the photos -- crime scene photos and

2  that sort of thing, and we email him that -- this was two

3  weeks ago -- that this next discovery coming out tomorrow

4  will have the bulk of the media production for that

5  Christopher Delacruz murder which is all of the surveillance

6  tapes from the scene, the crime scene photos, that sort of

7  thing.  Over a thousand media files.

8           MAG. JUDGE KELLEY:  What about the -- do you have

9  other kinds of typical homicide materials such as lab

10 results and that type of thing?

11          MR. LEVITT:  So the lab results that we attached

12 to the buccal swab motion we got Friday.

13          MAG. JUDGE KELLEY:  Okay.  But those are -- when

14 are those going to be shared?

15          MR. LEVITT:  Those can go out -- we can get them

16 out next week.  I mean, we literally got them Friday.  We

17 were in the process of -- we were about to file a buccal

18 swab motion.  Those came in, and so we just attached it to

19 the motion an filed it.

20          MAG. JUDGE KELLEY:  Okay.

21          MR. LEVITT:  But those sort of things.  You know,

22 the autopsy reports.  Those sort of things.  Some of that

23 has already gone out.  Others are going out tomorrow.

24          MAG. JUDGE KELLEY:  Okay.  Yes, Mr. Cunha?

25          MR. CUNHA:  I'd just like to endorse what Joan

1 Griffen said about organization.

2　　　　I'm also on the NECC case, and we in that case

3 don't think the organization sufficed, and it was far more

4 than what we have here and with respect to requesting

5 pinpoint discovery, which I have not done.  I'm waiting to

6 see the discovery first to figure it out, and then I'll make

7 my request.

8　　　　But this is a conspiracy indictment, so I am very

9 concerned about these 9,000, you know, recordings.  The

10 government does not have to prove that my client committed

11 the predicate acts --

12　　　　MAG. JUDGE KELLEY:  Sure.

13　　　　MR. CUNHA:  -- that they said he did.

14　　　　MAG. JUDGE KELLEY:  I know all about that.

15　　　　MR. CUNHA:  I assumed you would.

16　　　　MAG. JUDGE KELLEY:  I know what you're talking

17 about.

18　　　　So let me just say this.  Rather than have every

19 defense counsel go through every shred of evidence in the

20 case, I'm going to ask Mr. Cunha and Ms. Griffin and whoever

21 else, but especially those two, to after you receive the

22 discovery tomorrow, to look at it, and then to sit down with

23 the government in person and talk about either how could

24 this be better organized.  Or if the government is going

25 through things and translating things and organizing things,

1  perhaps they could do it in such a way that they can share

2  it with you as they do it and just how could it be organized

3  optimally.  And if the government is not able to help you,

4  then we should get together, a critical group of defense

5  lawyers, to do that.

6           You can have someone perhaps go through it and

7  organize it at least in a preliminary fashion and save

8  yourselves all a lot of time and trouble.

9           So let's just try that.  And we don't have to wait

10 until the next hearing.  I'm happy to convene another

11 conference if you want a conference to talk about it, or you

12 have some motion to make or whatever.

13          Because it's in everyone's interest to get this --

14 to communicate about this and get it organized in such a way

15 that people can do their work.  Okay?

16          I mean, another whole can of worms is when Mr.

17 Cunha tells his client I want you to listen to this

18 particular call or watch this particular video, will his

19 client in the institution be able to figure out where it is,

20 and if he can pull it up and listen to it?

21          MR. CUNHA:  Right.  And that's a concern that we

22 have.  Thank you.  I had forgotten to mention that.

23          MAG. JUDGE KELLEY:  Well, the government --

24          MR. CUNHA:  There is an index.  I'm not so clear

25 that my client has the wherewithal to use that index.

1          MAG. JUDGE KELLEY:  Well, okay.  Then that's

2  another thing to be looking at.

3          The government is going to be -- they have their

4  IT poised and ready to load up these computers with the

5  information so that people can access it in the institutions

6  --

7          And once again, if there was some -- if there was

8  some organization to the way in the discovery itself, it

9  would facilitate --

10          MR. CUNHA:  And when you're talking about again

11  9,000 as a number, it's a lot more likely that my client can

12  get through that than I can.  First of all, I don't speak

13  Spanish, but --

14          MAG. JUDGE KELLEY:  Well, the government needs to

15  go through those things.  You need to go through those

16  things.  Everyone needs it to be organized in such a way

17  that they can search it and find things easily, et cetera.

18  And hopefully you can cooperate on that, so.

19          Okay.  Moving right along.  You know, this is

20  taking quite a while.

21          If you need a case budget, which I think is

22  $40,000 or more that you anticipate billing, you must work

23  one out with Mike Andrews.

24          And he's having a meeting on June 13.  I don't

25  know the time.  Does anyone know the time?

*Judy Bond*
**Certified Federal Court Transcriber**
**508.984.7003**

1          ATTORNEY:  It has not been established yet as far

2  as I know.  He's looking into --

3          MAG. JUDGE KELLEY:  Okay.  Peter Parker thinks

4  it's at two, but if --

5          ATTORNEY:  Oh, excuse me.  It's at three o'clock.

6  That's right.  It is at three o'clock, yes.

7          MAG. JUDGE KELLEY:  Okay.  So he's out of town

8  today, so he couldn't be here.  But if you can't make the

9  three o'clock case budgeting meeting, just schedule a

10  tutorial with him, and he'll be happy to help you.  But

11  you've got to get a case budget going.

12          I'll let Mr. Bourbeau take the lead on this.  How

13  much time would you like to respond to Document No. 500, the

14  buccal swab motion?

15          MR. BOURBEAU:  Well, if all the information is

16  being provided tomorrow and I guess since they just received

17  this information, it will be provided following that.

18  Again, within 30 -- even 30 days if they're going to be

19  provided immediately, if it's going to be perhaps 45 days.

20          MAG. JUDGE KELLEY:  Why don't I just say anyone

21  who wants to object to that should object by July 29.

22          Is that going to throw the government off if the

23  motion is pushed out that far?  Is there some urgency to

24  that motion?

25          MR. LEVITT:  No.  I mean, all it means is --

1          The answer is no, but just in full disclosure what

2 it means is, you know, the lab is waiting.  The Boston

3 Police lab is ready to make comparisons.  There's a great

4 deal of forensic evidence in this case.  More than they've

5 experienced is what they've expressed to us in terms of --

6          And so and they've already just -- you know,

7 without even having buccal swab and maker case prints,

8 they've already gotten hits on -- you know, in murder cases.

9 So it just means that it will take longer for the forensic

10 review.

11          MAG. JUDGE KELLEY:  Why don't we say we'll set a

12 deadline of July 11.  And if you need more time to object to

13 it, you can file a motion for extension of that deadline,

14 but let's --

15          Is that all right with you?

16          MR. BOURBEAU:  That's fine.

17          Just so the Court's aware, we'll also from what I

18 see from the buccal swab motion, they have requested

19 destructive testing in their request.  So we'll need to

20 acquire by that time, as well, DNA experts who will have to

21 go and observe.  Which I believe the BPD labs allows the

22 observation.  State Police does not.  But we'll need to

23 acquire those experts to make the observation during the

24 initial testing and breaking down of material.

25          MAG. JUDGE KELLEY:  Okay.  Let's say by July 11

1  you can file a substantive objection to the motion, and then

2  also by that date if you have an expert -- whether you have

3  the expert or not, you can notify the Court I want an expert

4  to go, and then you can work that out with the government,

5  and the government --

6          I'm going to order the government now not to do

7  any testing until we know what is happening.

8          So I just draw everyone's attention to Local Rule

9  116.3(h) which says that in multi-defendant cases the

10 defense counsel are to try not to duplicate motions.  And it

11 actually requires you all to confer, but I'm not going to

12 impose that requirement.

13         But I think, for example, if someone's having a

14 DNA expert go --

15         It also says -- it relieves you of the necessity

16 of joining in a motion.  So you could just talk to Mr.

17 Bourbeau and perhaps not duplicate that unless you want to.

18 If you think there's a conflict is going to arise with the

19 expert or something, then you can do as you wish.  But if

20 you can piggyback on someone's expert, that's perfectly

21 acceptable, and I'll let you work that out among yourselves.

22         So is there anything else at this time?  Yes?

23         ATTORNEY:  I'd ask, Your Honor, if the

24 government's willing to give us a list of all the particular

25 phone numbers that they attribute to particular defendants,

1 that would expedite the search.  I don't think it harms the

2 government in any way.  And we're also assuming that each

3 defendant recalls the phone number that he used at a

4 particular time.

5          MAG. JUDGE KELLEY:  Or that he's even -- right, or

6 --

7          There are a lot of possibilities there.

8          But could you do that?

9          MR. LEVITT:  Yeah, we could try to do that.

10          MAG. JUDGE KELLEY:  Okay.

11          ATTORNEY:  Thank you.

12          MAG. JUDGE KELLEY:  Okay.  So anything else?  Yes,

13 sir.

14          MR. NORKUNAS:  Judge, I think that there's been a

15 number of detention hearings held throughout here, and I

16 think we would like the transcripts potentially of those.

17 And rather than have the -- you know, all of us or many of

18 us file for a separate transcript of that, if those could be

19 ordered, then we could have available a transcript to

20 everybody.

21          MAG. JUDGE KELLEY:  Okay.  So Ms. --

22          MR. NORKUNAS:  One task, and everybody gets a

23 copy.

24          MAG. JUDGE KELLEY:  Okay.  So Mr. Norkunas just

25 for the benefit of the people who are on the phone, Mr.

1 Norkunas is asking can we have transcripts of all the

2 various detention hearings and have them made available.

3 And I don't see why not rather than having everyone

4 requesting them.

5         ATTORNEY:  And the status conference today, Your

6 Honor?  Status conferences as well.

7         MAG. JUDGE KELLEY:  Okay.  So I do just have one

8 last matter to raise with the government; which is, do you

9 have a timetable for dividing up the defendants for trial

10 purposes?

11         MR. LEVITT:  I don't have -- we don't have a

12 timetable.  We have thought about it in response to the

13 question at the last status conference, sort of a framework

14 for it.

15         But even sort of as a precursor to that, we've had

16 a great deal of approaches from defendants about pleading,

17 and so there's a lot of those conversations occurring

18 already.  And so, you know, once --

19         We'll have a better sense once more of that has

20 played through.  We expect a good deal of that to happen in

21 the next couple months.

22         In terms of a frame --

23         So, you know, some of the framework will depend on

24 who's left at a certain point.

25         Certainly the drug defendants who are not -- who

1  are alleged to be suppliers to MS-13 or associates of MS-13

2  is a separable group that could in theory be tried separate.

3         When it comes to the remaining MS-13 defendants,

4  there are ways to separate them.  You know, it raises a

5  question of whether that would be efficient to do it.

6         But if, you know, at the end of the day there was

7  a certain number beyond which the Court would say, you know,

8  we need to separate these, certainly the separating by

9  murders can be done.  You know, there are certain defendants

10 who are implicated in murders that are related either in

11 time or in context or clique that could be done together.

12 And, you know, in theory all the murders could be done

13 together and another group separately.

14        The reason I raise the efficiency question is

15 there would be a tremendous amount of duplication in terms

16 of testimony because obviously the RICO conspiracy element

17 will be a significant aspect of any trial.  So there would

18 be a good deal of duplicative testimony.

19        But, you know, it could be done, and it really

20 will come down at the end of the day to the numbers I think.

21        JUDGE SAYLOR:  If I may join in?  I don't have any

22 firm ideas on this topic.  I note that Judge Chesler in New

23 Jersey just concluded a eight-defendant MS-13 trial.  Eight

24 defendants which took 16 weeks to try.  And if I extrapolate

25 that even a little bit, it gives me quite a bit of pause in

1 terms of what these trials -- or this trial might look like.

2          And we can't sever without duplication, and we

3 can't try everyone together without huge inefficiencies, as

4 well.  There's going to be no perfect solution here.

5          I want to make sure that you're thinking about it.

6 I think experience would suggest that the people most likely

7 to go to trial are the most major and the most minor

8 players, and it's possible that minor players might be spun

9 off in drug or gun charges or whatever that might be

10 handled, you know, efficiently or in advance of the more

11 significant cases.  I don't know.  It's an abstract idea.

12 Of course it's going to depend on who pleads and in what

13 cases and so forth.

14          But we also -- we need to have some structure at

15 some point going forward.  We can't assume that everyone's

16 going to plead or most people are going to plead or any

17 particular defendant's going to plead.

18          And I lie awake at night looking at the ceiling

19 sometimes thinking about what 2017 and 2018 are going to

20 look like for me personally, and in you're in my dreams, Mr.

21 Levitt.  So I just want you to make sure that you are

22 focused on that as well as counsel; you know, if your

23 client's going to go to trial, what that's going to look

24 like and in what time frame.

25          MR. LEVITT:  Just to add to that, Judge, you know,

1 we are -- we're also in contact with the prosecutors in New

2 Jersey as well as the ones in Virginia that completed a

3 trial recently, an MS case and North Carolina.  So, you

4 know, we're trying to learn from them in terms of what their

5 experiences were and where they think the inefficiencies

6 were and, you know, to try to see what we can do to make

7 this process as smooth as possible.

8          JUDGE SAYLOR:  Otherwise, I don't have anything to

9 add except that it seems like Mr. Parker from where he's

10 sitting ought to be put under oath and be cross examined by

11 someone.

12          MAG. JUDGE KELLEY:  So, I did also just want to

13 bring to everyone's attention that Judge Saylor did order

14 interim billing for all CJA counsel, and I think today was

15 one date by which you can bill.

16          And you don't need to file any motions for

17 interpreters.  There's a standing order of the First Circuit

18 that says if your client requires an interpreter in court,

19 you can expend reasonable funds for interpreters to see the

20 client so that it's not necessary to get advance permission

21 for interpreter's funds.

22          And I would like to have the next --

23          JUDGE SAYLOR:  Just on that, if you have any

24 questions about any of that, your first contact ought to be

25 Mike Andrews, okay, who's very involved in this and can help

1 guide you through that.

2          I mean, I'm getting these vouchers.  You know,

3 they're coming fast and furious -- and that's fine --

4 including a lot of interpreters which are, you know, easy

5 vouchers to approach.

6          But as you're figuring out how to go forward as

7 well as I'm, you know, beginning to struggle through this,

8 Mike Andrews is a resource of the Court that can help with

9 all of that.

10          MR. HALPERN:  Can I ask a question?  Steven

11 Halpern.

12          MAG. JUDGE KELLEY:  Yes.

13          MR. HALPERN:  I raised this at the last hearing.

14 Is there any sort of plan being considered to deal with

15 interpreters and --

16          I mean, I have to say I listened to this, and

17 there's almost like *Alice in Wonderland* aspect to it talking

18 about the burden of going through thousands of hours of

19 discovery.  It's not really much of a burden for me, because

20 I can't understand any of it.  You know, to talk about it as

21 though the production of stuff in a language that virtually

22 none of us can understand unindexed, so this notion that if

23 we just spend the time to review, we'll find the stuff that

24 relates to our clients, I mean just is absurd.

25          And the phone call -- you know, tracking this by

1 phone numbers?  I mean, you know, these guys change phone

2 numbers every other week.  The notion that they're going to

3 remember -- I just don't --

4 But my main issue was whether there's any thought

5 to what the plan is to get things translated, to get

6 discovery translated.

7 MR. CUNHA:  In both languages.

8 MAG. JUDGE KELLEY:  In both languages Mr. Cunha

9 just said.

10 Well, Mr. Halpern, I'm going to task you with

11 having a sit-down with the government to talk about this,

12 and I think previously Michael Tumposky also was going to

13 spearhead an effort to prevent counsel from duplicating

14 their efforts to have things translated.

15 So I assume the government will be translating

16 since we have English-speaking juries here a lot of these

17 phone calls.  And I think the point you raise is an

18 excellent one, and we should have addressed it.

19 And so if you don't mind, you can work on that.

20 I'm not trying to punish you for bringing that up, but I

21 just think we need a solution.  So --

22 MR. TUMPOSKY:  Your Honor --

23 Michael Tumposky here.

24 So, yeah, we had --

25 And I can talk to Mr. Halpern I think it was off

1 line.

2          But, you know, I have a paralegal who has been

3 appointed for this purpose, and so there is a mechanism.

4 It's not totally finalized, but basically it's on request

5 through her to have things sent to translate it and then

6 distributed to counsel.

7          MAG. JUDGE KELLEY:  Okay.  Well, --

8          MR. TUMPOSKY:  I think one aspect of it anyway.

9          MAG. JUDGE KELLEY:  Yeah, I think that's one

10 aspect of it.

11          But if the government is going to be going through

12 materials and translating them anyway, if -- perhaps they

13 could cooperate with defense counsel in letting them know

14 what their deadlines are for completing those things, and

15 maybe then defense counsel don't have to do it all

16 themselves.  And if defense counsel do do it, then perhaps

17 through Mr. Tumposky's efforts they can share that.

18          So maybe what I'll ask you, Mr. Halpern, is just

19 to talk to Mr. Tumposky and see how this is going along.

20          And Mr. Tumposky, if you don't mind staying in

21 communication with the rest of the defense lawyers so that

22 people who don't speak Spanish know what's happening in this

23 regard.

24          MR. TUMPOSKY:  Sure.

25          MAG. JUDGE KELLEY:  Okay.  So here's what I

1 propose that we do is have the next status conference on

2 September 8 which is 90 days away, and I just want to ask

3 first if there's anyone who objects to my excluding the time

4 between today and September 8 on behalf of their client,

5 would you speak up.

6          MS. PARSONS:  I do, Your Honor.

7          MAG. JUDGE KELLEY:  Oh, okay.

8          MS. PARSONS:  On behalf of Mr. Andrade.

9          MAG. JUDGE KELLEY:  Okay.  So I'm going to find --

10          Thank you very much.  18 USC 3161(h)(7(A)(B)(ii)

11          And I'm going to find that under 18 USC 3161(h)(7)

12 (A) and (H), (B)(ii), that this is a complex case and that

13 the time is necessary for the parties to get their cases in

14 order.

15          However, if, Ms. Parsons, you want to object after

16 September 8, I'll consider the status of discovery, et

17 cetera, and we can send you up.

18          MS. PARSONS:  Okay.

19          MAG. JUDGE KELLEY:  And obviously anytime you want

20 to ask for a speedy trial, you can do so.

21          MS. PARSONS:  Thank you, Your Honor.

22          MAG. JUDGE KELLEY:  But as of now, we'll exclude

23 the time for everyone until September 8, and in the meantime

24 --

25          THE CLERK:  Excuse me, Judge.  What time on

1 September 8?

2          MAG. JUDGE KELLEY:  Three o'clock.  I'm sorry.

3 Thank you.

4          In the meantime, we'll have the discovery dates

5 that we set before:  June 30 for the discovery letter, and

6 July 29 to wrap up automatic discovery, and then by July 11

7 we'll have objections to the buccal swab motion and any

8 notifications of defendant's experts needing to be present

9 at destructive testing.

10          And if we require a hearing after that date, I'll

11 set a date, and it will appear on ECF, and whoever wants to

12 can attend.  It obviously won't be mandatory that you

13 attend.

14          Okay.  Anything else from anyone?

15          Yes, Mr. Norkunas.

16          MR. NORKUNAS:  (Inaudible) to ask Judge Saylor.

17 Those of us who may have not put in the original bill for

18 June 1, does the Court agree to give us any leeway for that

19 first bill?  I know it's been ordered by June 1.

20          MAG. JUDGE KELLEY:  For interim billing?

21          MR. NORKUNAS:  Yes.

22          JUDGE SAYLOR:  Off the record.

23      (Off the record discussion.)

24          MAG. JUDGE KELLEY:  Okay.  Thank you all very

25 much.

1              ATTORNEY:  Thank you, Judge.

2        (Court adjourned at 4:08:41 p.m.)

50

1                          CERTIFICATION

2        I, Judy Bond Gonsalves, a court approved transcriber,

3   certify that the foregoing is a correct transcript from the

4   official electronic sound recording of the proceedings in

5   the above-entitled matter.

6

7

8   _____ July 11, 2016
    Judy Bond

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Judy Bond*
**Certified Federal Court Transcriber**
**508.984.7003**